UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH C. MILLER, | ) | Case No. 1:07 CV 0348 |
| | ) | |
| Plaintiff, | ) | Judge John R. Adams |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Joseph C. Miller appeals for judicial review under 42 U.S.C. §405(g) and its related counterpart 42 U.S.C. §1383(c)(3) of the decision of the Commissioner denying disability insurance benefits and supplemental security income. Miller is a younger individual suffering from mental retardation and he contends that the evidence establishes that his degree of impairment met or equaled the listing requirements of §12.05C & D of the Listing of Impairments of Appendix 1 to qualify him for benefits without further consideration.[1] The Commissioner adopted the determination

---

[1]

**12.05 Mental retardation:** Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
Or
D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

1:07 CV 0348                                                                 2

of an administrative law judge under 20 C.F.R. §404.981 and §416.1481 finding that Miller had a verbal I.Q. of 65, performance I.Q. of 63 and full scale I.Q. of 61 but had no other psychological impairment or severe physical impairment necessary to satisfy the requirements of §12.05C or 12.05D. Based on vocational expert testimony the Commissioner determined that Miller could perform substantial gainful activity as a housekeeper (TR. 16, 195-199). Thus the decision terminated at the fourth step in the sequential evaluation process. Miller challenges this conclusion contending that the evidence demonstrates severity satisfying the requirements of both aforesaid listing provisions.

*Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

Pursuant to 20 C.F.R. §404.1520(a) there is a five-step sequential evaluation process beginning with the question whether the applicant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment. See §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). It is the Commissioner's reasoning at the third step of a disability evaluation sequence which is critical here, which is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.[1] See 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d). If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience. See *Bowen v. Yuckert*, 482 U.S. 137, 141,

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1

1:07 CV 0348                                                3

107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")

Since Miller's impairment is a mental impairment as categorized under §12.00 of the Listing of Impairments, the sequential evaluation must be applied in conjunction with §404.1520a governing mental impairment and its SSI counterpart §416.920a. This requires rating the degree of functional limitation in accordance with the prescribed psychiatric review technique (PRT). The primary purpose of the PRT is to assess whether or not a claimant's mental restrictions meet or equal the listing of impairments. 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3) incorporate assessment of severity as described under §12.00C of the Listing of Impairments of Appendix 1. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00C. The procedure is to rate "four broad functional areas" of activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation. See 20 C.F.R. §404.1520a(c)(3); §416.920a(c)(3). The first three functional areas are rated on the five point scale of "none," "mild," "moderate," "marked," and "extreme." See §404.1520a(c)(4); §416.920a(c)(4). The last area, deterioration or decompensation is rated on the four-point scale of "none," "one or two," or "three, four or more." *Id.*

The problem confronted by litigants is that the definitions contained in §12.00C provide only a very general description of "marked" limitation for the first three functional areas, and this

1:07 CV 0348                                                                    4

difficulty is compounded by the lack of any definitions of "mild" or "moderate. These nebulous descriptions make it extremely difficult for litigants to target the severity of impairment as being "moderate" instead of "marked."

Sections 404.1520a(c)(4) and 416.920a(c)(4) explain that using the PRT ratings, ratings of none or mild in the first three functional areas and none in the last functional area indicate non-severe impairment. In all other instances, the ALJ must assess whether a "severe" mental impairment meets or equals a listed impairment, and then, if not, assess residual functional capacity and the ability to perform substantial gainful activity. See §404.1520a(d)(2)&(3); §416.920a(d)(2)&(3).

Furthermore when it comes to administrative consideration of medical equivalence, as opposed to meeting a listed impairment, there must be consideration of the opinion given by medical or psychological consultants designated by the Commissioner. See §404.1526(c); §416.926(c) and (d). This designated consultant's opinion presents a formidable obstacle because, " long standing policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight. SSR 96-6p, 1996 WL 374180 at *3.

1:07 CV 0348 5

The ALJ found that Miller's impairments or combinations of impairments did not meet or medically equal one of the listed impairments from Appendix 1 (TR. 16). In making this assessment, the ALJ considered the PRT from the designated consultants (TR. 14, 103-118). The PRT prepared by the designated state agency physicians in February 2002 reported only mild restriction in the first three functional areas of §12.05D and no episodes of decompensation (TR. 113). Based on these ratings the ALJ could have found that Miller's I.Q. presented a non-severe impairment since no degree of limitation was marked moderate or extreme. However, the ALJ sensibly found that the evidence of mild mental retardation constituted a "mild too moderate" restriction and thus did constitute a "severe" impairment requiring evaluation under the listing of impairments (TR. 14). The PRT provided substantial evidence to reject disability under §12.05D since there was in no medical opinion a "marked" restriction in any of the functional areas. The PRT further provided substantial evidence to reject the argument of meeting or equivalency to §12.05C since no other mental impairment was identified. (See TR. 103).

Miller argues that this is incorrect because he does have a significant additional mental impairment which imposes a significant work related limitation of function (Brief at 6). However, he does not identify what this additional mental impairment was or where it is diagnosed in the record. Miller argues that his significant additional mental impairment is due to being fired from his job of 15 years for theft and that he was fired from another cleaning job due to poor performance. These arguments fall short. Accordingly the ALJ had substantial evidence on which to find that the severity of the impairment did not meet or equal §12.05C. Moreover, "[a]lthough the presence of

1:07 CV 0348　　　　　　　　　　　　　　　　　　　　　　6

multiple impairments can on occasion support a finding that the impairments are equivalent to a listing, a finding of equivalence under Listing 12.05C will 'very rarely be required.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001), quoting *Riley v. Apfel*, 1998 WL 553151, at *5 (6th Cir. Aug. 20, 1998) (unpublished table decision) (quoting Social Security Program Operations Manual DI 24515.056 DIC.

With respect to §12.05D Miller refers the court to a list of activities or the lack thereof to demonstrate marked impairment of activities of daily living and difficulties in maintaining concentration, persistence and pace. Miller is in effect asking the court to revisit the evidence *de novo* and render an independent assessment of whether he is disabled. However, he presents no contradicting evidence from a medical expert on the issue of whether he has "marked" restriction in any of the functional areas. He is just simply requesting that the court second guess the ALJ and the opinion from the state agency physician. The role of the court is not to examine the credibility of claimant's testimony or resolve conflicting evidence but rather to determine whether substantial evidence supports the Commissioner's determination of disability within the meaning of the Social Security Act. See *Foster v. Halter*, 279 F.3d at 353. The decision that the evidence did not meet or equal a listed impairment was supported by substantial evidence.

*Sheltered Workshop Environment:*

Finally, although not clearly set forth in his statement of errors, Miller contends he qualifies for disability by meeting the requirements at Step 4 of the sequential evaluation. "At the fourth step

1:07 CV 0348                                                    7

of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform [his] previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sec'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Miller argues that although he had worked 15 years at Kaufmann's this was the only job he had done and it was "made up" by a compassionate friend of the family who was in a position to do so and to protect him in it. (TR. 179). Miller relies on the testimony from the vocational expert who responded that if everything Miller said today were true, he would not be able to perform his past relevant work because, "he isn't sure of himself in work situations and day-in and day-out ability, of work and quality and quantity from what I've heard, it would be in my opinion that probably, he would not be able to do that work." (TR. 200).

What Miller is essentially raising is an argument that he did not have meaningful past relevant work experience because he worked in a sheltered workshop environment. See 20 C.F.R. §404.1573(c); *Boyes v. Sec'y of Health and Human Services*, 46 F.3d 510 (6th Cir. 1994). While the ALJ did not directly address the sheltered workshop issue, he did find no basis for addressing Dr. Bonem's concerns over Miller's ability to maintain consistent employment due to cognitive deficits and coordination weaknesses because, "this ignores a fifteen year history of uninterrupted employment with one employer." (TR. 16).

Special considerations arise where work is in "specially arranged circumstances, for example other persons helped you prepare for or get to and from your work," or the "opportunity to work"

1:07 CV 0348                                                    8

existed "because of family relationship." See 20 C.F.R. §416.973(c)(4) and (6). There was no explicit analysis in the decision whether the 15 years of work at Kaufmann's constituted a "sheltered workshop" environment. This issue leads to the critical matter of whether or not Miller's work constituted "past relevant work." The regulatory scheme requires the ALJ, "to consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." See 20 C.F.R. §404.1565(a); §416.965(a). If Miller has demonstrated that he is unable to perform his past relevant work, then there is error in the ALJ's decision. Miller's testimony certainly indicated that his job had low expectation requirements and was more of a make-work situation given to him out of compassion by a family friend. Miller is arguing that this prior work experience was not a real job and thus not past relevant work. If Miller's work at Kaufmann's was not substantial gainful activity then there would be no "past relevant work" for the ALJ to stop at the fourth step in the sequential analysis process.

The ALJ found that Miller's part-time earnings from his job were above the threshold level required to constitute substantial gainful activity (TR. 13-14). Miller does not challenge this conclusion and further his earning records show that during 1997 through 2001 his gross earnings were in the neighborhood of $12,000 annually (TR. 47). It is for this reason that the failure to consider the sheltered workshop environment issue becomes superfluous. Granted, work done under special conditions such as under a sheltered workshop environment may not necessarily constitute substantial gainful activity. See 20 C.FR. §1573(c); §416.973(c). However there is a regulatory presumption under 20 C.F.R. §404.1574(b)(2) and §416.974(b)(2) that earnings in excess of the

amounts shown in related tables indicate that work was substantial gainful activity. See *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006). This presumption applies even to work performed under a sheltered workshop environment. See 20 C.F.R. §404.1574(b)(4) and §416.974(b)(4)., *i.e.* work in a sheltered workshop or "comparable facility."

Under "Table 1" for non-blind individuals, monthly earnings which average more than $700.00 for the period of July 1999 through December 2000 are presumed to be substantial gainful activity. For the following year (2001) monthly earnings in excess of $740.00 activate this presumption. (For monthly amounts after 2000 see Social Security Online, Tables of Automatic Increases found at http://www.ssa.gov/OACT/COLA/autoAdj.html.) Miller's earnings record exceeded these threshold amounts and thus constituted substantial gainful activity. Consequently, the decision on this point was legally correct. These regulations fuse consideration of whether work done in a sheltered environment constitutes past relevant work with whether that work constituted substantial gainful activity. Miller's paychecks establish he was performing substantial gainful activity so that his prior "housekeeping" job constituted past relevant work and there was no error.

## *CONCLUSION AND RECOMMENDATION*

The issues before this court must be resolved under the standard of whether the determination is supported by substantial evidence of record. "Under 42 U.S.C. §405(g), the ALJ's findings are conclusive as long as they are supported by substantial evidence." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 851 (6th Cir. 1986) (stating that this court's review "is limited to

1:07 CV 0348                                                     10

determining whether there is substantial evidence in the record to support the findings")." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001). Based on the arguments presented, the record in this matter and the applicable law, the undersigned recommends that the Commissioner's determination denying disability insurance benefits and supplemental security income be affirmed as supported by substantial evidence.

This is not to say that the undersigned does not appreciate the points Miller made through the vocational expert's testimony. While the Commissioner's decision is legally correct, it may well be out of touch with reality. However, inability to obtain work due to factors outside vocational abilities cannot be a reason for finding disability. See 20 C.F.R. §404.1566(c); §416.966(c).

                                                                                      s/James S. Gallas
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: April 18, 2008